MAGNOLIA PETROLEUM CO. v.
UNITED STATES.

No. 45678.

Court of Claims.

Jan. 3, 1944.

Raymond M. Myers, of Dallas, Tex. (Homer Hendricks, of Washington, D. C., on the brief), for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff sues to recover the sum of $114,695, the amount of taxes paid upon the transportation by pipe line of crude petroleum and the refined products thereof, plus interest. Transportation at three places was involved. One was from its storage tanks at its refinery at Beaumont, Texas into vessels at its wharves on the Neches River, which was the north boundary of its plant; another was from its storage tanks at its refinery at Beaumont to its terminal at Magpetco, nine miles down the river from Beaumont; and the third was from its storage tanks on the Cameron Meadows lease in Louisiana into barges. The transportation from the storage tanks at Beaumont was of both refined products and of crude oil. The transportation from the storage tanks at Cameron Meadows was of crude petroleum only.

Section 731 of the Revenue Act of 1932, 47 Stat. 169, 275, 26 U.S.C.A. Int.Rev. Acts, page 636, levies a tax "upon all transportation of crude petroleum and ، liquid products thereof by pipe line." The tax is to be paid "by the person furnishing such transportation." In amount it equals 4 percent of the charge made for the transportation or, if the owner of the petroleum products furnishes his own transportation, then the tax is 4 percent of the charge a pipe-line company makes for like service.

The transportation upon which the tax was levied in this case was from the plaintiff's storage tanks into the holds of vessels. The charge on which the tax was assessed was 1½ cents per barrel where the transportation was from the tanks on the refinery grounds at Beaumont into vessels at the wharf contiguous to the refinery ground, 2½ cents per barrel where the

transportation was from the storage tanks on the refinery grounds to vessels at the wharf at Magpetco, and 2½ cents per barrel where the transportation was from the storage tanks at the Cameron Meadows lease to the vessels in the canal contiguous to the lease.

Transportation from storage tanks into the holds of vessels is a transportation service rendered by pipe-line carriers, and they charge for it rates varying from 1½ cents per barrel to 2½ cents per barrel. They call this a charge for "loading." Presumably the rate from 1½ cents per barrel to 2½ cents per barrel depends upon the distance from the storage tanks to the vessel. If the distance is short a charge of 1½ cents per barrel is made, but if the distance is longer the rate go up to as much as 2½ cents per barrel.

The storage tanks at the Beaumont refinery from which the products were transported to the vessels were about 50 in number. They were arranged in rows of from 4 to 7 tanks. These rows were from about 400 feet to 2,400 feet from plaintiff's wharf. They were about nine miles from the Magpetco terminal. Plaintiff ran its own pipe lines through its own property from the storage tanks to the loading racks at its wharf at Magpetco.

Plaintiff says that no pipe-line company ever runs its lines into the refinery grounds of another company and, therefore, no pipe-line company ever renders the service taxed in this case; but all pipe-line companies do make a charge for loading vessels from storage tanks, and this is the transportation upon which the tax was levied in this case. The tax was levied on the charge pipe-line companies make for such transportation. This is in accordance with the Act (Sec. 731(b).

It was plainly the purpose of Congress to tax movements through privately owned facilities as well as those over common carrier pipe lines, partly for the purpose of avoiding giving advantage, by way of exemption from the tax, to persons owning their own facilities. This was the view of the Fifth Circuit Court of Appeals in McKeever v. Fontenot, 104 F.2d 326. The movements there involved were identical with the movements here, that is, from the refinery into the holds of vessels through private facilities on the property of the person owning the oil. The court sustained the tax because it was levied on a transportation service furnished by pipe-line carriers, for which published rates were charged.

In 1942, Congress passed an Act exempting from the tax "movement * * * within the premises of a refinery, a bulk plant, a terminal, or a gasoline plant" (Sec. 616, Revenue Act of 1942, 26 U.S.C.A. Int.Rev. Code, § 3460(c), but this Act was not in effect during the time in question.

Plaintiff says that some of the movements in this case were incidental to the refining of the crude petroleum and that all of them were incidental to the transportation of products by water, and that therefore they should not be subjected to the tax. It bases this argument on the provisions of Article 26 of Regulations 42, promulgated under the Revenue Act of 1932. This article reads in part: "* * * It also includes the transportation by private owner whenever the movement is substantially similar to movements which pipe-line carriers usually undertake and perform, if the movement is not merely local or incidental to another business or a related business engaged in by the person so transporting, such as the producing or refining of oil. Thus, where a refiner maintains a trunk line or a gathering line from a refinery to an oil field or pool, the services which the refiner performs for himself are similar to those which pipe-line carriers would otherwise render. The refiner, therefore, should pay the tax as though he had in fact employed the services of a carrier. If, on the other hand, the movement is from storage tanks to stills which are a part of the same manufacturing unit, or from wells to flow tanks or storage tanks situated in the immediate vicinity, the movement is not such as a pipe-line carrier would normally render and consequently is not subject to the tax imposed under Section 731. * * *"

Although this regulation seeks to exempt from the tax a transportation which is incidental to a business engaged in by the owner of the oil, it is seen that the basic test established by it is whether or not the transportation service upon which the tax is levied is such as is customarily performed by a pipe-line carrier. There can be no doubt under the proof that all pipe-line carriers do charge for a loading service, that is, the transportation of the oil from storage tanks to vessels.

Refineries located away from a navigable stream which had no pipe line from the re-

finery to the vessel and which had to secure the services of a pipe-line carrier having such facilities would have to pay not only for the transportation from the storage tanks to the water, but also for the loading of the oil into the vessels. A loading charge is made in addition to the charge for transporting up to the point of loading into the vessel. If plaintiff were exempted from this charge it would derive an advantage over other refineries not so favorably located.

The transportation at the Cameron Meadows lease was also from storage tanks to vessels. Tariffs on file in the case show that at least one pipe-line company operating in this vicinity makes a charge of 2½ cents per barrel for this service. The tax was assessed on this charge.

Plaintiff also says the charge upon which the tax was assessed was not a fair charge, that a much smaller charge would have yielded a fair return on the investment. This argument is of no avail because the tax was assessed on the charge established by bona fide tariffs. It is only in the absence of tariffs that the Commissioner is authorized to determine what would be a reasonable charge (Sec. 731(b). See National Pipe Line Co. v. United States, 48 F.Supp. 655, 99 Ct.Cl. 180, 190 et seq.

Plaintiff's petition will be dismissed. It is so ordered.

JONES, Judge, took no part in the decision of this case.